21-cr-58 NEB/TNL

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **INDICTMENT** |
| ) Plaintiff, ) | |
| ) | 18 U.S.C. § 1343 |
| v. ) | |
| ) | |
| DIJANA RAHIC, ) | |
| a/k/a Dijana Ceric, ) | |
| ) | |
| Defendant. ) | |

The UNITED STATES GRAND JURY charges:

## INTRODUCTION

1. From in or around January 2015 through in or around July 2019, the defendant, DIJANA RAHIC, used her position as the accounting manager of Victim Company to defraud the company of more than $700,000 through false and fraudulent pretenses, representations, and concealment of material facts.

2. At all relevant times, Victim Company was an engineering, architectural, and consulting firm headquartered in Bilbao, Spain. Victim Company had operations all over the world, including in the United States. Victim Company's United States offices were based in Minneapolis, Minnesota.

3. RAHIC was employed as the accounting manager for Victim Company's US operations from in or around February 2015 until in or around July 2019. RAHIC was based out of the Minneapolis office. From in or around 2017 until 2019, RAHIC was the only accountant employed in the Minneapolis office.

4. As accounting manager, RAHIC had access to Victim Company's financial operations which included access to Victim Company's bank accounts and

SCANNED
MAR 11 2021
U.S. DISTRICT COURT ST. PAUL

credit cards. RAHIC's duties included payroll and benefits administration for employees, tracking cash flow projections for the company, and keeping an accurate accounting of the profits and losses for Victim Company RAHIC had authority to issue payments from Victim Company's bank accounts and to make charges on its credit accounts for legitimate business expenses.

## THE SCHEME TO DEFRAUD

5. From in or about January 2016 through in or about July 2019, in the State and District of Minnesota, and elsewhere, the defendant,

**DIJANA RAHIC**
**a/k/a/ Dijana Ceric,**

did knowingly devise and participate in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

6. As part of her scheme to defraud Victim Company, RAHIC primarily used three different methods to convert Victim Company's funds to her own personal uses. These methods included (1) disguising cash transfers as employee expense reimbursements, payroll, and customer payments, (2) using company credit cards and checking accounts to pay personal bills and make personal purchases, and (3) directly transferring funds from company accounts to her own bank account and those of known associates.

7. <u>Expense Reimbursement Method:</u> At all relevant times, Victim Company employees could request company reimbursement for legitimate business expenses. Reimbursements were processed through Victim Company's bank, Wells

Fargo. The reimbursement process included documenting the employee requesting reimbursement, the amount of the reimbursement, and the account where the requesting employee would like the reimbursement deposited.

8. Reimbursements were processed multiple times per month and typically happened in batches. It was common for several reimbursements to be processed at the same time. When Wells Fargo processed a batch of reimbursements, only the total batch amount would appear on Victim Company's monthly bank statements. The statement would not contain an individual breakdown of each individual reimbursement request. By looking at Victim Company's monthly account statement, it would only be possible to see the total amount of employee expense reimbursements paid out. It would not be possible to identify the individual amounts paid or the name of the employee who received the reimbursement request.

9. It was common for Victim Company to pay several thousand dollars of employee expense reimbursements per month.

10. The majority of RAHIC'S scheme operated by exploiting Victim Company's employee reimbursement procedure. RAHIC frequently generated false reimbursement requests in the system. She would conceal the reimbursement by putting the request in another employee's name, but have the money directly deposited into her own personal bank account. She further concealed the reimbursement by making sure that it was processed in a batch with other reimbursement requests, thereby ensuring that only the batch's total amount of reimbursements paid would appear on Victim Company's monthly statements.

11. At no point did Victim Company authorize RAHIC to obtain expense reimbursements using other employee's names.

12. <u>Personal Purchase Method</u>: At all relevant times, Victim Company maintained at least one company credit card and at least one company checking account through Wells Fargo Bank. As accounting manager, RAHIC had access to both accounts. RAHIC routinely exploited this access by using the accounts to make unauthorized payments for her own personal expenses.

13. RAHIC frequently charged personal purchases to Victim Company's credit card. Her purchases included approximately $50,000 in products from Amazon.com, $15,000 in other online retailers, and $14,000 in online grocery deliveries, among other things. The purchases were either shipped directly to RAHIC, or were sent as gifts to her significant other, her family, or other known associates. Furthermore, her purchases included $92,000 in non-business-related travel. As an accountant, RAHIC did not regularly travel for business.

14. RAHIC concealed her spending by categorizing her purchases as legitimate business needs in the company's general accounting software. In reality, the purchases were not authorized business expenses. At no point did Victim Company authorize RAHIC to pay personal bills, or to make personal purchases using Victim Company's credit account or checking account.

15. <u>Direct Transfer of Funds Method</u>: Using her access to the Victim Company checking account as described above, RAHIC also transferred a total of approximately $53,000 directly from Victim Company's account to her own personal

bank account and the accounts of her known associates. Victim Company has never employed the associates and did not authorize these transfers.

16. <u>Concealment</u>: In furtherance of her scheme to defraud, RAHIC concealed her theft by creating false ledger entries in the company's accounting software to ensure the accounts appeared balanced. This included adding extra costs to legitimate vendor expenses to inflate the bills, as well as adding completely false expenses for various products and services.

## COUNTS 1-2
## (Wire Fraud)

17. Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

18. On or about the dates set forth below, in the State and District of Minnesota and elsewhere, the defendant,

**DIJANA RAHIC**
**a/ka/ Dijana Ceric,**

for the purpose of executing the scheme described above, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, and sounds, as follows:

| Count | Date (on or about) | Wire Details |
|---|---|---|
| 1 | May 17, 2019 | An interstate wire communication to transfer $4,889.75 via check from Victim Company's account at Wells Fargo Bank to RAHIC's personal account at Bank of America. |
| 2 | July 9, 2019 | An interstate wire transfer of $25,008 from Victim Company's account at Wells Fargo to the personal bank account of L.C. at Bank of America. |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

19. Counts 1-2 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c).

20. As the result of the offenses alleged in Counts 1-2 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

21. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) and by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____     _____
ACTING UNITED STATES ATTORNEY     FOREPERSON